# EXHIBIT A

*Complaint filed February 14, 2011*

ELECTRONICALLY FILED
2/14/2011 11:20 AM
2011-L-001672
CALENDAR: S
PAGE 1 of 13
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION

| | |
|---|---|
| MARIA ISABEL PERALES, | |
| Plaintiff, | |
| v. | Case No. |
| TOWN OF CICERO, LARRY DOMINICK President of the TOWN OF CICERO, in his official and individual capacity, ANTHONY INIQUEZ, in his individual capacity, KATHY ORDMAND, in her individual capacity, SERGE ROCHER, in his individual capacity, | |
| Defendants. | Plaintiff Demands Trial By Jury |

## COMPLAINT

Plaintiff MARIA ISABEL PERALES, through her undersigned counsel, seeks redress against Defendants TOWN OF CICERO, LARRY DOMINICK, in his official and individual capacity, ANTHONY INIQUEZ, in his individual capacity, KATHY ORDMAND, in her individual capacity, and SERGE ROCHER, in his individual capacity, and states as follows:

### Introduction

1. Plaintiff MARIA ISABEL PERALES brings this action to redress acts of political retaliation in violation of the First Amendment right to free association pursuant to 42 U.S.C. § 1983 (Count I). Plaintiff seeks declaratory and injunctive relief as well as damages for her injuries.

2. Defendants' actions reflect a systematic policy and practice of retaliation.

## Jurisdiction

3. Jurisdiction and venue of this Court are provided by 735 ILCS § 5/2-101 and 735 ILCS § 5/2-206.

## The Parties

4. Plaintiff Maria Isabel Perales ("Perales") is a resident of Cook County.

5. Defendant Town of Cicero ("Cicero") is a municipality incorporated under the laws of the State of Illinois.

6. At all relevant times, Defendant Cicero has been continuously engaged in an industry affecting commerce.

7. At all relevant times, Defendant Larry Dominick ("Dominick") served in the elected position of President of the Town of Cicero. Dominick is sued in his individual and official capacities.

8. At all relevant times hereto, Defendant Dominick had policy making authority with respect to policies relating to employee discipline and terminations.

9. The Town of Cicero has admitted in the past that President Dominick has policy making authority with respect to employment issues.

10. Defendant Dominick had decision making authority regarding Plaintiff's termination.

2/14/2011 11:20 AM
2011-L-001672
PAGE 2 of 13

11. Defendant Dominick had policy making authority to implement policies for the Town of Cicero to prevent retaliation against employees based on association and political affiliation.

12. At all relevant times, Defendant Cicero employed Defendant Anthony Iniquez ("Iniquez"). Defendant Iniquez served as Superintendant of the Cicero Police Department. Defendant Iniquez is sued in his individual capacity.

13. As the Superintendant of Police, Defendant Iniquez was delegated policy making authority with respect to the police and auxiliary police department.

14. Defendant Iniquez was Plaintiff's supervisor in the chain of command, and had decision making authority regarding Plaintiff's termination.

15. At all relevant times, Defendant Cicero employed Defendant Kathy Ordmand ("Ordmand"). Defendant Ordmand served as Town of Cicero Executive Director of the Public Safety Office Building. Defendant Ordmand is sued in her individual capacity.

16. Defendant Ordmand was not Plaintiff's supervisor.

17. At all relevant times, Defendant Cicero employed Defendant Serge Rocher ("Rocher"). Defendant Rocher served as Deputy Chief over the Auxiliary Police. Defendant Rocher also served at all relevant times as President Dominick's "body guard." Defendant Rocher is sued in his individual capacity.

18. Defendant Rocher was Plaintiff's supervisor in the chain of command, and had decision making authority regarding Plaintiff's termination.

3

19. Defendants Dominick, Iniquez, Ordmand, and Rocher were acting within the scope of their employment at all times.

20. Defendants Dominick, Iniquez, Ordmand, and Rocher were acting under color of law at all relevant times.

## Facts Upon Which Plaintiff's Claims Are Based

21. Plaintiff Perales was employed by Defendant Town of Cicero from on or about February 21, 2006 through March 5, 2009 in the Auxiliary Police Department.

22. During the time that Plaintiff was employed by Defendant Town of Cicero, Plaintiff worked as a dispatcher, secretary, and worked in an administrative security position at the front desk of the Cicero P.S.O. Building checking identification cards.

23. Plaintiff Perales never worked on the street as an Auxiliary Officer.

24. Because Plaintiff Perales never worked the street as an Auxiliary Officer, she was not required to carry a firearm and was never sent to firearms training.

25. Perales performed and completed all of her duties satisfactorily.

26. On or about February 9, 2009, Perales went to work and found another Cicero employee, Nancy Castillo, sitting in Perales's seat. Plaintiff then contacted Defendant Rocher to inquire about Castillo sitting in her seat. In response, Defendant Rocher told Perales that he wanted someone who could carry a firearm in Perales's position, and to "go home," "relax," and that he would "call her later."

2/14/2011 11:20 AM
2011-L-001672
PAGE 4 of 13

4

2/14/2011 11:20 AM
2011-L-001672
PAGE 5 of 13

27. Defendant Rocher never called Perales after he told her to "go home" and "relax."

28. Over the course of three to four weeks after February 9, 2009, Perales unsuccessfully attempted to contact her supervisor and Defendant Larry Dominick regarding Rocher's statement and the new alleged requirement for her to carry a firearm.

29. Prior to February 9, 2009, Perales was never told that she had to complete training to carry a firearm as a part of her job duties.

30. On or about March 3, 2009, Perales attended a precinct captain meeting held by Defendant Dominick and the Cicero Voters Alliance, which is Defendant Dominick's political organization.

31. During the March 3, 2009 precinct captain meeting, Defendant Dominick yelled at Perales and told her to "get out here." Immediately after, Defendant Rocher instructed one of his officers to escort Perales out of the precinct captain meeting. Perales was then escorted out of the building.

32. Defendant Dominick believed that Perales was doing political work for his political opponent Garcia in the 2009 election.

33. Defendant Dominick stated to others that Perales was "working for the other side."

5

34. Two days after the precinct captain meeting, on March 5, 2009, Defendants Dominick, Rocher, and the Town of Cicero terminated Perales's employment with the Town of Cicero.

35. Defendant Town of Cicero, as an employer and government entity, should provide employees, including Perales, with a written explanation as to why they are being terminated.

36. Perales never received any documentation from any of Defendants regarding her termination or providing an explanation for her termination.

37. Prior to March 16, 2009, Perales's personnel file did not contain any disciplinary records or reprimands.

38. On or about March 16, 2009, Defendant Rocher was contacted as to the reasons for Perales's termination. Initially Defendant Rocher stated that Deputy Felbinger and Chief Iniquez knew why Perales was terminated.

39. Defendant Rocher denied at that time know why Perales was terminated.

40. Defendant Rocher was again contacted directly and asked why Perales was terminated, to which he responded "I know nothing about it."

41. Defendant Rocher then later claimed that Perales was terminated for not carrying a duty weapon and for a "complaint that was filed against her while working at the PSO Building."

42. At that time there were no complaints within Perales's personnel file.

43. Perales never received a complaint while working at the PSO Building.

6

44. Perales was not "certified" for weapons training, which meant that she was not required to take firearms certification training as part of her duties.

45. On May 28, 2009, Perales requested a copy of her personnel file pursuant to the Illinois Personnel Record Review Act.

46. On or about June 9, 2009, Defendant Town of Cicero provided Perales with a copy of her personnel file.

47. Despite the fact that there were no disciplinary documents or reprimands within Perales's personnel file as of March 16, 2009, the copy that was produced to Perales in June 2009 had a written warning notice dated September 5, 2007 signed by Defendant Kathy Ordmand and a handwritten memorandum from Defendant Kathy Ordmand dated November 20, 2008.

48. Defendant Ordmand falsified the September 5, 2007 warning notice and the November 20, 2008 handwritten memorandum to be placed in Perales's personnel file after the fact to try to justify her termination.

49. Defendant Ordmand created the above referenced documents to be placed in Perales's personnel file with the knowledge and consent and/or at the direction of Defendants Town of Cicero, Dominick, Rocher, and Iniquez.

50. Defendant Town of Cicero and its management and supervisors should not manufacture warning notices or falsify documents to try to justify an employee's termination.

7

51. Ordmand knows that she should not falsify or manufacture documents to try to justify an employee's termination.

52. When Perales applied for unemployment compensation with the Illinois Department of Employment Security (IDES), the Town of Cicero opposed Perales's application for unemployment benefits.

53. Defendant Rocher participated in the IDES hearing in which the Town of Cicero opposed Perales's request for unemployment benefits.

54. During the IDES hearing, Defendant Rocher stated that Perales was allegedly terminated because she had not completed training to carry a firearm, despite the fact that Perales was never certified for weapons training and was not required to carry a firearm in her administrative position.

55. During the IDES hearing, Defendant Rocher stated that he told Perales about the firearms training five times prior to February 9, 2009. Defendant Rocher, however, never told Perales verbally or in writing that she needed to complete firearms training prior to February 9, 2009.

56. There is no documentation in Perales's personnel file that shows that she was ever given written notification to attend firearms training or that this was a requirement for her position.

57. Because of Defendant Rocher's false statements to the hearing officer, Perales's application for unemployment compensation was initially denied.

2/14/2011 11:20 AM
2011-L-001672
PAGE 8 of 13

8

58. Perales was forced to hire an attorney and appeal the hearing officer's decision. On appeal, the reviewing officer held:

> It is not credible to us that the claimant, having "five times" engaged in an act of insubordination pertaining directly to her alleged fitness to hold her office, would not have been more formally warned for her misbehavior. We wonder why it was necessary to offer the claimant training so many times when her reasons were unlikely to change.
>
> The facts of this case do not lead us to believe that the claimant "constructively quit" her employment for failure to maintain weapons training certification.
>
> In the current case, the evidence does not establish, by a preponderance, that the claimant was told to take the training, or admonished for refusal or neglect in not doing so.

59. Defendants' opposition to Perales's application for unemployment benefits was further retaliation in violation of First Amendment rights under the United States Constitution based on Perales's rights of free association.

60. Defendant terminated Perales's employment with the Town of Cicero and retaliated against her because they believed that she was supporting Defendant Dominick's political opponent.

61. Firing someone because they are believed to be supporting a political opponent violates the First Amendment to the United States Constitution.

62. Defendant Dominick knows that employment decisions should not be made based on someone's political or perceived political affiliation.

9

63. Defendant Dominick knows that it is unlawful and a violation of the First Amendment to make employment decisions based on someone's political or perceived political affiliation.

64. Defendant Rocher knows that employment decisions should not be made based on someone's political or perceived political affiliation.

65. Defendant Rocher knows that it is unlawful and a violation of the First Amendment to make employment decisions based on someone's political or perceived political affiliation.

66. Defendant Iniquez knows that employment decisions should not be made based on someone's political or perceived political affiliation.

67. Defendant Iniquez knows that it is unlawful and a violation of the First Amendment to make employment decisions based on someone's political or perceived political affiliation.

68. Defendants' actions in terminating Perales, and retaliating against her by creating documents after the fact to try to justify her termination, and opposing her unemployment benefits, as well as giving false testimony, violates Perales's constitutional rights under the First Amendment.

69. Defendants Cicero, Dominick, Iniquez, and Rocher have engaged systemic retaliation against employees and residents of the Town of Cicero in violation of their rights under the First Amendment to freedom of association, including political association.

2/14/2011 11:20 AM
2011-L-001672
PAGE 10 of 13

70. As a result of Defendants' conduct, Perales has suffered great mental anguish, humiliation, degradation, emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## COUNT I

### (42 U.S.C. § 1983 First Amendment Retaliation v. All Defendants)

71. As against all Defendants, Town of Cicero, Larry Dominick, Anthony Iniquez, Kathy Ordmand, and Serge Rocher, Plaintiff restates and realleges by reference paragraphs 1 through 70 above as though fully set forth herein.

72. At all times relevant hereto, Defendants acted as employees, supervisors, and final policymakers for the Town of Cicero.

73. The conduct of Defendants was and became the custom and practice of the Town of Cicero and Defendant Dominick, officially and individually.

74. Defendants Cicero, Iniquez, Rocher, and Dominick unlawfully terminated Perales's employment because of her perceived political affiliation.

75. Defendant Ordmand participated in the retaliation against Perales by falsifying and manufacturing documents and having them placed in Perales's personnel file in an attempt to justify Defendant Cicero, Iniquez, Rocher, and Dominick's unlawful termination of Perales's employment in violation of her First Amendment right to free association.

11

76. By Defendants' actions, Perales suffered compensable injury and harm as a result of the denial of rights guaranteed to her pursuant to the First Amendment to the United States Constitution.

77. The conduct of Defendants violated Perales's right to free association as provided by the First Amendment to the Constitution.

78. Defendants intentionally retaliated against Perales with malice or reckless indifference to her civil rights, thereby entitling Perales to punitive damages against Defendants.

79. The Town of Cicero has insurance that covers not only punitive damages against the individual Defendants, but also covers punitive damages against the Town of Cicero.

80. Defendants' actions have caused Perales great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

81. Defendants' actions were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests:

    A. All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

    B. Compensatory damages in an amount to be determined at trial;

    C. Defendants be required to pay pre-judgment interest to Plaintiff on these damages;

D. A permanent injunction enjoining the Defendants from engaging in the retaliatory practices complained of herein;

E. A permanent injunction requiring Defendants to adopt employment practices and policies in accord and conformity with the requirements of the United States Constitution and pursuant to 42 U.S.C. § 1983;

F. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G. Punitive damages against Defendants;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I. Such other relief as the Court may deem just or equitable.

Respectfully submitted,

MARIA PERALES

_____
Attorney for Plaintiff

KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
Atty No. 43132